Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Mark Robison, an individual,

Plaintiff,

vs.

DG Retail, LLC, a Tennessee limited liability company; Dollar General Corporation, a Tennessee corporation,

Defendants.

Case No.: CV-25-03618-PHX-DGC

**PLAINTIFF'S REVISED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS**

(EVIDENTIARY HEARING REQUESTED ONLY IF THE COURT DEEMS ONE NECESSARY)

(Assigned to the Honorable David G. Campbell)

Plaintiff Mark Robison, by and through undersigned counsel, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and the Court's October 23, 2026 Order (ECF No. 26), respectfully moves the Court for entry of default judgment against Defendants DG Retail, LLC ("DGR") and Dollar General Corporation ("DGC") (collectively, "Defendants") on Count I of the First Amended Complaint (FAC, the "FAC") because the Clerk has entered Defendants' default, each of the factors identified in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), favors judgment, and the declarations and records submitted with this Motion prove the damages Mr. Robison seeks.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

This Motion is supported by the following Memorandum of Points and Authorities, the Declaration of Mark Robison (**Exhibit 1**), the Declaration of Sean A. Woods and its attached records (**Exhibit 2**), and the record in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

### A. The Workers' Compensation Claim and the Delayed Surgery.

Mr. Robison injured his shoulders and cervical spine on January 7, 2022, while working for DGC. FAC ¶¶ 6, 8, 12. He reported the injury, and a workers' compensation claim was opened through DGR and/or DGC. FAC ¶ 7. DGC insured itself, in whole or in part, against employee injury claims and used DGR as its workers' compensation insurer, so DGR and/or DGC were the insurers responsible for the claim. FAC ¶¶ 9-10. The claim records bear that out. A 2022 Notice of Claim Status lists DGC as the "Carrier or Self-Insured," and later filings before the Industrial Commission of Arizona ("ICA") name DGR as the carrier, each with Sedgwick Claims Management Services, Inc. ("Sedgwick") as third-party administrator. **Ex. 2**, Exs. G, J, K.

Defendants limited the claim from the start. Their August 22, 2022 Notice of Claim Status accepted the claim with "[l]iability limited to bilateral shoulder strains only," leaving out the cervical spine. **Ex. 2**, Ex. J. The ICA's later decision describes the limiting notice as dated March 22, 2022. **Ex. 2**, Ex. K at 1. Either way, Mr. Robison had complained of spinal injuries from the beginning, and his MRIs confirmed them. FAC ¶¶ 13-14. In February 2022, the physician treating him at Concentra told the adjuster of a "concern for patient wellness and need for expedited physiatry consult . . . ." **Ex. 2**, Ex. M at 64. By April 2022, the Concentra physician had diagnosed cervical myelopathy with cervical radiculopathy and recorded that a referral to an orthopedic spine specialist had been "denied by insurance adjustor." ***Id.*** at 95-96.

By the summer of 2023, Mr. Robison still could not get treatment approved for his neck. On June 6, 2023, orthopedic surgeon Eric A. Eifler, M.D., concluded "with

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

reasonable medical probability" that the industrial accident caused the neck and shoulder injury and referred Mr. Robison to Jeffrey D. Scott, M.D., to be seen by spine surgeon Abhishiek Sharma, M.D., "for possible surgery." ***Id.*** at 9. The next day, Dr. Eifler's office sent the adjuster a written request for preauthorization of that referral by e-mail and fax. **Ex. 2**, Ex. O at 8. The section of the form for the payer's decision is blank on the copy filed with the ICA on August 1, 2023. ***Id.*** That same day, Mr. Robison's workers' compensation counsel requested a hearing before the ICA, alleging that Defendants had failed to approve treatment and that the limiting notice was void. **Ex. 2**, Ex. K at 1.

On or about August 15, 2023, Dr. Scott submitted a preauthorization request for a surgical consultation for decompression and fusion. FAC ¶¶ 15-16. Dr. Scott's note that day records pain of 8 to 10 on a 10-point scale, marked weakness in both arms, and muscle wasting, and it states that Mr. Robison very likely needed a decompression and fusion. **Ex. 2**, Ex. A. It also explains why the claim had stalled. Dr. Scott wrote that an orthopedic spine evaluation "was denied and it is presumably due to the injury declared 'bilateral shoulders,'" and that "[t]his is a cervical spine injury and he needs a spine surgeon." ***Id.*** at 2. Defendants denied the request. FAC ¶ 18.

On or about September 13, 2023, Dr. Scott recommended an urgent surgical consultation and submitted a second preauthorization request. FAC ¶ 19. His September 12, 2023 note records pain of 10 out of 10, new numbness, and episodes of incontinence, and it states that Mr. Robison might need emergent cervical decompression. **Ex. 2**, Ex. B. Defendants denied that request too. FAC ¶ 20. On September 19, 2023, Mr. Robison went to the emergency room with urinary and bowel incontinence and saddle anesthesia. **Ex. 2**, Ex. P at 1. The emergency physician listed "[l]ack of access to timely care from a specialty service" among the social factors affecting his care. ***Id.*** at 6.

Plaintiff discloses the records that cut against urgency. The emergency room MRI showed "no evidence of cord compression," and Mr. Robison was discharged with instructions to follow up with neurosurgery. ***Id.*** at 1. Dr. Scott's October 12, 2023 note

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

records that it was then determined the condition was not a surgical emergency. **Ex. 2**, Ex. C. Dr. Scott did not withdraw his recommendation, and on October 16, 2023, he renewed it, writing that he still recommended evaluation by Dr. Sharma. ***Id.***

Defendants held their position through a formal ICA hearing on October 2, 2023. **Ex. 2**, Ex. K at 1. On December 26, 2023, the day set for the continued hearing, Defendants advised the administrative law judge that they had agreed to approve Mr. Robison's requested treatment, which resolved the hearing. ***Id.*** That was 133 days after Dr. Scott's first request. Only then did Defendants authorize a consultation with Dr. Sharma. *See* FAC ¶ 24. When Dr. Sharma saw Mr. Robison on February 7, 2024, he found a positive Hoffmann's sign, bilateral clonus, right deltoid strength of 2 out of 5, and gross atrophy of the right biceps, and he concluded that the symptoms were unlikely to improve without surgery. **Ex. 2**, Ex. D. Dr. Sharma requested approval of surgery the next day. **Ex. 2**, Ex. L at 2. As of March 19, 2024, Mr. Robison's workers' compensation counsel reported to the ICA, the surgery still had not been approved, and Defendants had not replied to Dr. Sharma's inquiries. ***Id.*** The records do not show the date of approval. The FAC alleges that it came on or about the date of surgery, FAC ¶ 25, but a later records review shows that Mr. Robison had a preoperative visit with Dr. Sharma's practice on April 9, 2024. **Ex. 2**, Ex. Q at 10. Mr. Robison underwent an anterior cervical discectomy and fusion at C5 through C7 on April 25, 2024. **Ex. 2**, Ex. E. Throughout that time Mr. Robison lived with severe, debilitating pain and lost the full use of his arms. FAC ¶ 21; **Ex. 1**, ¶¶ 5-9.

The surgery did not restore him. In October 2024, Dr. Sharma's practice recorded that "due to the chronicity and severity of his weakness and overall cervical pathology prior to surgical intervention, his recovery is slowed and there is a high likelihood he will have incomplete resolution of his symptoms." **Ex. 2**, Ex. F at 13. In December 2025, after nerve testing showed severe bilateral C7 radiculopathy, Dr. Sharma recommended a second surgery, a posterior decompression and fusion from C4 to T1. ***Id.*** at 14. Mr. Robison has not had it. ***Id.*** at 6, 15. In May 2026, Dr. Sharma placed him on permanent restrictions, and

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Defendants' June 10, 2026 notice states that he was "found to have sustained 7% with permanent restrictions." ***Id.*** at 15; **Ex. 2**, Ex. G at 2.

Plaintiff also discloses a related ICA ruling. On March 25, 2024, Mr. Robison's workers' compensation counsel filed an ICA complaint of bad faith and unfair claim processing directed at the delay in approving the surgery. **Ex. 2**, Ex. L at 1-2. The complaint invoked the Commission's own definition of bad faith and sought $500. ***Id.*** An ICA notice dated December 11, 2024 denied it. **Ex. 2**, Ex. N at 1. Mr. Robison's counsel requested a hearing, but on April 7, 2026, his current workers' compensation counsel withdrew all pending requests for hearing, including a separate request asserting the necessity of medical treatment, and the administrative law judge ordered that no further action be taken on the bad faith complaint. ***Id.*** at 1, 3, 8. No administrative law judge ever heard it. Section **IV(B)** explains why that ruling does not control here.

### B. <u>Procedural History</u>

Mr. Robison filed this action in state court, and it was removed to this Court on September 30, 2025. ECF No. 9 at 1. He filed the FAC on January 23, 2026, naming DGR and DGC as the only Defendants. FAC at 1. Process servers served each Defendant through its statutory agent, Corporation Service Company, on March 30, 2026, and neither Defendant has answered or otherwise appeared since. ECF Nos. 17-18; ECF No. 20-1 ¶¶ 2-4.

On June 26, 2026, Plaintiff requested entry of default and mailed the request and supporting declaration to Defendants' statutory agent in Nashville, Tennessee. ECF No. 20 at 2; ECF No. 20-1 at 2. The Clerk entered default against both Defendants that day. ECF No. 21. Plaintiff then applied for default judgment and asked the Court to set a damages hearing. ECF No. 25. On October 23, 2026, the Court denied that application without prejudice and directed Plaintiff to file a revised motion that addresses the *Eitel* factors, sets out any liquidated damages and their proof, and presents affidavits or other evidence of unliquidated damages. ECF No. 26. On November 6, 2026, Plaintiff moved for a short

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

extension of the deadline to file it. ECF No. 27. Plaintiff files this Motion in response to the Order and is serving it by mail on Defendants, at the address of their statutory agent, and on the counsel who represents them in the ICA proceedings. **Ex. 2**, ¶ 23.

## II. THE COURT HAS JURISDICTION OVER THE CLAIM AND THE PARTIES.

When a plaintiff seeks judgment against a party who has failed to plead or otherwise defend, the court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Both are present here.

### A. Subject-Matter Jurisdiction

The Court has diversity jurisdiction under 28 U.S.C. § 1332. FAC ¶ 4. Mr. Robison lives in Tonopah, Arizona, has lived in Arizona since 2002, and intends to remain in Arizona, so he is a citizen of Arizona. **Ex. 1** ¶ 2. DGC is a Tennessee corporation with its principal executive offices in Goodlettsville, Tennessee. FAC ¶ 3; **Ex. 2**, Ex. I. DGR is a limited liability company, and "an LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). DGR has represented in its own federal filings that its sole member is Dolgencorp of Texas, Inc., a Kentucky corporation with its principal place of business in Tennessee. **Ex. 2**, Ex. H ¶¶ 6-11. DGR is therefore a citizen of Kentucky and Tennessee. No Defendant shares Arizona citizenship with Mr. Robison, and the damages sought below exceed $75,000.

### B. Personal Jurisdiction and Service

DGR and DGC are licensed to do business in Arizona and do business here. FAC ¶¶ 2-3. Mr. Robison's claim arises from Defendants' handling of an Arizona workers' compensation claim, before the Industrial Commission of Arizona, for an injury that an Arizona employee suffered at work in Arizona. *See* FAC ¶¶ 1, 6-7; **Ex. 2**, Ex. G. Each Defendant was served through its statutory agent. ECF Nos. 17-18.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## III. THE *EITEL* FACTORS FAVOR DEFAULT JUDGMENT.

Whether to enter default judgment is within the Court's discretion. *Eitel*, 782 F.2d at 1471. The Court considers "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Id.* at 1471-72. Upon default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted).

### A. Mr. Robison Has No Other Path to Relief.

The first factor asks whether the plaintiff will be prejudiced if judgment is not entered. Where a defendant will not appear and participate, a plaintiff denied default judgment "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, Defendants have ignored the FAC for more than seven months and did not respond after the Clerk entered their default. Without a judgment, Mr. Robison cannot recover anything, so the first factor favors judgment.

### B. The Bad Faith Claim Has Merit and the FAC Pleads It Sufficiently.

The second and third factors, considered together, ask whether the complaint states a claim on which the plaintiff may recover under the governing law, which for Count I is the law of Arizona.

In Arizona, "[t]he tort of bad faith arises when the insurer 'intentionally denies, fails to process or pay a claim without a reasonable basis.'" *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 237, ¶ 20 (Ariz. 2000) (quoting *Noble v. National Am. Life Ins. Co.*, 128 Ariz. 188, 190 (Ariz. 1981)). An insurer "has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

legitimate claim," and it "cannot lowball claims or delay claims hoping that the insured will settle for less." *Id.* at 238, ¶ 21. The question is whether the insurer acted unreasonably "in the investigation, evaluation, and processing of the claim," and "either knew or was conscious of the fact that its conduct was unreasonable." *Id.* at 238, ¶ 22.

The tort reaches workers' compensation claims, because an injured employee's bad faith claim against the workers' compensation carrier is a first-party claim. *Mendoza v. McDonald's Corp.*, 222 Ariz. 139, 149, ¶ 32 (App. 2009). The claim is a separate tort rather than a consequence of the industrial injury, and the exclusivity provision of the Workers' Compensation Act does not reach it. *See id.* at 149, ¶ 31. The defendant in *Mendoza* was a self-insured employer that refused to authorize the surgery its employee's physician recommended. *Id.* at 142-43, ¶¶ 2-3.

Here, the FAC alleges each element, and those allegations are now taken as true. Defendants were the insurers responsible for Mr. Robison's workers' compensation claim. FAC ¶¶ 9-11, 28. His physician twice asked for authorization of a surgical consultation, the second time describing it as urgent, and Defendants denied both requests. FAC ¶¶ 15-20. They denied the treatment "[d]espite clear medical recommendations," leaving Mr. Robison to suffer for months. FAC ¶¶ 22-23. They failed to investigate promptly and adequately, refused payment without a reasonable investigation, and delayed investigation and payment of the claim. FAC ¶ 31. They did so in bad faith, causing damages. FAC ¶¶ 29-30, 34. Those allegations describe the delay and denial of a legitimate claim that *Zilisch* condemns. An insurer also "should not force an insured to go through needless adversarial hoops to achieve its rights under the policy." *Zilisch*, 196 Ariz. at 238, ¶ 21. The ICA record shows Defendants did that here, refusing to approve the requested treatment through a formal hearing and then agreeing to it on the day of the continued hearing. **Ex. 2**, Exs. J, K.

The records also show that Defendants knew what they were refusing. The adjuster's conduct is theirs, because an insurer that delegates the handling of a claim "remains liable for the actions taken by this delegate because the duty of good faith itself is non-delegable."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

*Walter v. Simmons*, 169 Ariz. 229, 238 (Ariz. App. 1991). In February 2022, the Concentra physician told the adjuster of the "need for expedited physiatry consult," and in April 2022, after the adjuster denied a spine referral, the physician warned that "there has been significant delay to diagnosis and treatment which is concerning as it can affect outcome." **Ex. 2**, Ex. M at 64, 96. In October 2022, two months after Defendants accepted only "bilateral shoulder strains," the adjuster requested surveillance of Mr. Robison, and the investigator's report lists his reported injuries as "Shoulders, Cervical Spine, Hands, and Paralysis of Upper Extremities," and his restrictions as "[i]nability to move arms above the head and no work status." **Ex. 2**, Ex. R at 2; Ex. J. In November 2022, the independent medical examiner who evaluated Mr. Robison for the adjuster, Anthony Theiler, M.D., found that his complaints "appear to be related to the incident in question" and recommended evaluation by a neurologist and an "orthopedic spine specialist for evaluation of his cervical spine." **Ex. 2**, Ex. M at 12, 18-19. In February 2023, after nerve testing, he found no basis for further treatment from an orthopedic extremity standpoint but again stated that Mr. Robison "needs further evaluation by a neurologist" and an "orthopedic spine specialist." ***Id.*** at 27-28. In June 2023, Dr. Eifler found that Mr. Robison "exhibits no signs of malingering," tied the neck injury to the industrial accident, and asked the adjuster in writing to approve the referral that would lead to Dr. Sharma. ***Id.*** at 9; **Ex. 2**, Ex. O at 8. In August 2023, Dr. Scott wrote that the spine evaluation had been denied "presumably due to the injury declared 'bilateral shoulders.'" **Ex. 2**, Ex. A at 2. Defendants themselves filed the Concentra, examiner, and Dr. Eifler records with the ICA on November 27, 2023, while they were still refusing the treatment. **Ex. 2**, Ex. M at 1. That evidence supports the second element of the tort, that Defendants knew or were conscious that their conduct was unreasonable. *Zilisch*, 196 Ariz. at 238, ¶ 22. The second and third factors favor judgment on Count I.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mr. Robison seeks judgment only on Count I and asks that Count II (breach of fiduciary duty) and Count III (negligence), which seek the same damages and would add nothing to the judgment, be dismissed without prejudice when judgment is entered.

**C. <u>The Amount at Stake Is Proportionate to the Harm.</u>**

The fourth factor weighs the amount sought against the seriousness of the defendant's conduct. Mr. Robison seeks compensatory damages of $205,700 for severe pain, lost arm function, and distress during the 133 days in which Defendants refused the care his physician had requested and the 61 days in which he then waited for surgery, and for the continuing and future harm that followed. **Ex. 2**, Exs. A-F, L, O, P; **Ex. 1**, ¶¶ 5-12. He does not seek damages for the industrial injury itself, for medical bills Defendants paid, or for wage loss. He also seeks an equal amount in punitive damages, which Section **IV(C)** ties to Defendants' knowing refusal of care that their own records show was needed. The fourth factor favors judgment.

**D. <u>There Is No Possibility of a Dispute Over Material Facts.</u>**

Because the well-pleaded facts of the complaint are taken as true upon default, except those relating to damages, and Defendants have not appeared to contest any fact, no genuine dispute of material fact exists. *PepsiCo*, 238 F. Supp. 2d at 1177. The records submitted with this Motion are consistent with the FAC.

Plaintiff discloses the records Defendants might have offered had they appeared. In January and February 2025, more than a year after the delays at issue, two examiners who reported to Defendants' ICA counsel, Dr. Theiler and Leo Kahn, M.D., concluded that Mr. Robison's arm weakness was most likely Parsonage-Turner syndrome, a nerve condition they did not attribute to his work, and one of them found that he needed no further orthopedic treatment. **Ex. 2**, Ex. Q at 1, 4-6, 12, 19, Ex. N at 9. Those opinions do not create a material dispute. Defendants' default admits the FAC's allegations that they denied the requested care despite clear medical recommendations and without a reasonable investigation. FAC ¶¶ 22-23, 31. Dr. Sharma reviewed the 2025 examination and

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

disagreed, writing that Mr. Robison's "diagnoses are fairly obvious," and Dr. Eifler later found his presentation "not consistent with parsonage-turner syndrome." **Ex. 2**, Ex. F at 13, Ex. O at 3. Dr. Theiler, who in 2022 and 2023 had recommended a spine evaluation, described the fusion as "accepted," and Defendants' own 2026 notice accepts a 7% impairment "with permanent restrictions." **Ex. 2**, Ex. Q at 6, Ex. G at 2. The fifth factor favors judgment.

**E. <u>Defendants' Default Was Not the Product of Excusable Neglect.</u>**

Each Defendant was served through its statutory agent, and Plaintiff later mailed the request for entry of default to that same agent. ECF Nos. 17-18; ECF No. 20 at 2; ECF No. 20-1 at 2. Defendants also knew of this lawsuit from its start. Sedgwick, which administers the claim for DGR, was the original defendant and was represented by counsel in this action when the FAC was filed. FAC at 8:13-19; **Ex. 2**, Ex. G. Moreover, Defendants were litigating this same claim before the ICA, through counsel, when they were served. Pollart Miller LLC entered its appearance in May 2025 as "counsel of record for Dollar General Corporation and DG Retail, LLC." **Ex. 2**, Ex. N at 9. In March 2026, that firm submitted evidence to the administrative law judge on March 11, requested a subpoena on March 24, and on March 27, three days before Defendants were served here, noticed Mr. Robison's deposition. ***Id.*** at 4, 6-7. The ICA served its April 2026 award on the same counsel. ***Id.*** at 2. More than seven months have passed since service without any response. Defendants' silence here, while their counsel was active against Mr. Robison in the parallel ICA proceeding, was a choice and not excusable neglect, so the sixth factor favors judgment.

**F. <u>The Policy Favoring Decisions on the Merits Does Not Bar Judgment.</u>**

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But a defendant's failure to answer "makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Defendants chose not to defend, and the seventh factor therefore does not stand in the way of judgment.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## IV. DAMAGES

Allegations about the amount of damages are not taken as true on default, so Plaintiff must provide evidence. *TeleVideo*, 826 F.2d at 917-18. A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The FAC demands compensatory damages, including general damages and damages for pain and suffering. FAC at 7:17-20. Every dollar of compensatory damages requested below is of that kind.

A bad faith plaintiff "may recover all the losses caused by defendant's conduct, including damages for pain, humiliation and inconvenience, as well as for pecuniary losses." *Rawlings v. Apodaca*, 151 Ariz. 149, 161 (1986). In the workers' compensation setting, those damages must flow from the carrier's bad faith handling of the claim, not from the workplace injury. *Mendoza*, 222 Ariz. at 149-50, ¶¶ 32-33. An injured worker may recover damages for pain and suffering proximately caused by that bad faith. *Id.* at 150, ¶ 33.

### A. Liquidated Damages

Plaintiff does not seek any liquidated sum in this Motion. Defendants' workers' compensation coverage paid for Mr. Robison's medical care, and he does not seek wage loss. **Ex. 1**, ¶ 13. Plaintiff will seek taxable costs and any attorneys' fees by separate application after judgment as Rule 54(d) provides.

### B. Unliquidated Damages

Mr. Robison seeks general damages for the pain, suffering, emotional distress, and loss of enjoyment of life that Defendants' delay caused, and the evidence of that harm falls into three periods.

The first is the 133 days between Dr. Scott's August 15, 2023 request and Defendants' December 26, 2023 agreement to approve treatment. During that time Mr. Robison's pain ran from 8 to 10 out of 10, his right deltoid and biceps were severely weak, and the muscles of his upper arms were wasting. **Ex. 2**, Ex. A. By September 2023 he had

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

numbness and episodes of incontinence, and on September 19 he went to the emergency room with urinary and bowel incontinence and saddle anesthesia. **Ex. 2**, Ex. B, Ex. P at 1. When Dr. Sharma finally examined him in February 2024, he had signs of spinal cord involvement, could not button his shirts or lift his arms above his shoulders, and described symptoms that interfered with his daily activities. **Ex. 2**, Ex. D. He describes in his own words what those months were like. **Ex. 1**, ¶¶ 5-9.

The second is the 61 days between Dr. Sharma's February 8, 2024 request for surgery and Mr. Robison's April 9, 2024 preoperative visit. **Ex. 2**, Ex. L at 2, Ex. Q at 10. The FAC alleges that Defendants approved the surgery only on or about April 25, 2024, FAC ¶ 25, which would make this period 77 days, but because the records show a preoperative visit on April 9, Plaintiff measures the period only to that date. Dr. Sharma had already found that Mr. Robison's symptoms were unlikely to improve without surgery. **Ex. 2**, Ex. D. The ICA notice that denied the administrative bad faith complaint does not control this action. That complaint sought $500 under the Commission's own definition of bad faith, and no administrative law judge ever heard it. **Ex. 2**, Ex. L at 1-2, Ex. N at 1. A.R.S. § 23-930 "establishes an administrative remedy complementing the common-law action," and the Commission's definition of bad faith "is not applicable in actions filed in the courts." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 274-75 (Ariz. 1994). Plaintiff states the amount for this period separately so that the Court may award the remainder even if it declines this part.

The third period covers the continuing and future harm. The FAC alleges that Mr. Robison "continues to suffer tremendous pain, a loss of enjoyment of life, and is facing lifelong care due to" Defendants' bad faith. FAC ¶ 26. The records support that allegation. Dr. Sharma's practice attributes Mr. Robison's slowed recovery and likely incomplete resolution to the chronicity and severity of his weakness before surgery, a period that Defendants' refusal and delay extended. **Ex. 2**, Ex. F at 13. In February 2026, Dr. Eifler found that "[c]hronic denervation for 5 years significantly limits potential for recovery even

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

with surgical intervention." **Ex. 2**, Ex. O at 3. Dr. Sharma has recommended a second fusion because, "given the long-standing nature of his symptoms, it is unlikely that these will improve without surgical intervention." **Ex. 2**, Ex. F at 14. Mr. Robison has declined it for now, citing his age and health and his "concerns in receiving lack of authorization for potential necessary care postoperatively as this was the case after his most recent surgical Intervention." ***Id.*** at 6. He now lives with a 7% permanent impairment and permanent restrictions that include lifting no more than 10 pounds and restricting overhead lifting. ***Id.*** at 15; **Ex. 2**, Ex. G at 2. He describes in his own words the pain and limits he lives with today. **Ex. 1**, ¶¶ 10-12. Plaintiff cites the 2025 and 2026 records only as evidence of that lasting harm, not as the basis for any separate claim. The examiners' contrary opinions, discussed in Section **III(D)**, do not address whether the delay affected his recovery.

Mr. Robison requests general damages of $39,900 for the first period, $12,200 for the second period, and $153,600 for the continuing and future harm, for a total of $205,700. The first two figures reflect $300 for each of the 133 days of refusal and $200 for each of the 61 days of waiting for surgery, a lower rate because by then he had seen Dr. Sharma and surgery was in view. The third reflects $20 a day, one-tenth of the waiting-period rate, over the 21.04 years that the Social Security Administration's current actuarial table projects for a 61-year-old man, rounded to the nearest hundred dollars. **Ex. 1**, ¶ 1; **Ex. 2**, Ex. S; *see* Fed. R. Evid. 201(b)(2), (c)(2). The lower rate claims only the part of his lasting limits that the records tie to the delay, the incomplete recovery his surgeon attributed to the chronicity of his weakness before surgery, and not his condition as a whole. **Ex. 2**, Ex. F at 13. Because his restrictions are permanent, and Dr. Eifler found that the chronic denervation limits recovery even with further surgery, it is reasonable to measure that harm over his lifetime. ***Id.*** at 15; **Ex. 2**, Ex. G at 2, Ex. O at 3.

Judgment should run against both Defendants for the full amount. Arizona's comparative fault statute "preserves joint liability for both true joint tortfeasors . . . and those vicariously liable for the fault of others." *Wiggs v. City of Phoenix*, 198 Ariz. 367,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

371, ¶ 13 (Ariz. 2000). Defendants were insurers responsible for this claim, FAC ¶¶ 9-11, 28, thus each owed the non-delegable duty of good faith, and each is therefore liable for the whole of the harm caused by the adjuster to whom they entrusted it. *See Walter*, 169 Ariz. at 238.

**C. <u>Punitive Damages</u>**

The FAC demands punitive damages, FAC at 7:24-25, so Rule 54(c) permits an award. Punitive damages in a bad faith case require clear and convincing evidence that the insurer was consciously aware of the insured's needs and rights and nevertheless ignored its obligations. *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 332 (Ariz. 1986). The evidence described in Section **III(B)** meets that standard. While accepting only shoulder strains, the adjuster denied a spine referral despite the treating physician's warning that delay could affect the outcome, requested surveillance of Mr. Robison for a reported cervical spine injury and "Paralysis of Upper Extremities," and received written recommendations from the adjuster's own examiner and from Dr. Eifler that he be seen by a spine specialist. **Ex. 2**, Ex. M at 9, 18-19, 27-28, 95-96, Ex. O at 8, Ex. R at 2, Ex. J. Defendants nonetheless refused Dr. Scott's requests for a surgical consultation until the day of a continued ICA hearing, and they filed the physicians' and examiner's records with the ICA while the refusal continued. **Ex. 2**, Ex. K at 1, Ex. M at 1. The pattern continued after surgery. In December 2024, Dr. Sharma's practice recorded that Mr. Robison's shoulder and psychology evaluations had been denied, and in December 2025 he still had not received approval to follow up with Dr. Eifler. **Ex. 2**, Ex. F at 5, 13; FAC ¶¶ 29-31. *Walter* left open whether a delegate's state of mind alone supports punitive damages against the insurer, 169 Ariz. at 239-40, but the Court need not decide that question, because Defendants acted through their own counsel as well when they defended the refusal through a formal hearing with these records in hand. Plaintiff therefore requests punitive damages of $205,700, equal to the compensatory damages requested. That one-to-one ratio is at the low end of the range the Supreme Court has described, in which "[s]ingle-digit multipliers

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

are more likely to comport with due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).

**D. <u>Post-Judgment Interest</u>**

Mr. Robison requests post-judgment interest at the federal rate. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).

**E. <u>A Hearing Is Not Required, but Plaintiff Will Attend One if the Court Wishes.</u>**

Plaintiff submits that the declarations and records establish the damages requested, and that the Court may decide this Motion on the papers. *See* ECF No. 26 (citing Fed. R. Civ. P. 55(b)(2)(B)). If the Court would prefer to hear from Mr. Robison directly, Plaintiff requests a brief evidentiary hearing at the Court's convenience.

**V. <u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) enter default judgment on Count I against DG Retail, LLC and Dollar General Corporation, jointly and severally, for general damages of $205,700 (or $193,500 if the Court declines the second period) and punitive damages of $205,700; (2) award post-judgment interest under 28 U.S.C. § 1961; (3) dismiss Counts II and III without prejudice; and (4) in the alternative, set a brief evidentiary hearing on unliquidated and punitive damages.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**RESPECTFULLY SUBMITTED** this 13th day of November 2026.

**MILLS + WOODS LAW, PLLC**

By *__/s/ Sean A. Woods__*
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants, and that on the same day I mailed a copy of the foregoing document and its exhibits by first-class United States Mail to the following:

DG Retail, LLC
Dollar General Corporation
c/o Statutory Agent, Corporation Service Company
2908 Poston Ave.
Nashville, TN 37203-1312
*Defendants*

Brad J. Miller, Esq.
Pollart Miller LLC
2415 East Camelback Road, Suite 700
Phoenix, AZ 85016
*Counsel for Defendants in the related Industrial Commission proceedings*

*/s/ Ben Dangerfield*